SECURITIES INVESTOR PROTECTION CORPORATION, Applicant,

v.

EXECUTIVE SECURITIES CORPORATION, Defendant.

SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

EXECUTIVE SECURITIES CORPORATION et al., Defendants.

No. 75 Civ. 733 (CHT).

United States District Court, S. D. New York.

May 26, 1977.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for Trustee; Eric H. Moss, New York City, of counsel.

Richard O. Bertoli, pro se.

TENNEY, District Judge.

The trustee of Executive Securities Corporation ("Executive"), appointed by this Court for the liquidation of Executive pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*, moves that the Court find Richard O. Bertoli in contempt for his failure to obey lawful subpoenas duces tecum as well as direct orders of this Court. The Court reaffirms its earlier assessment of attorneys' fees and damages against Bertoli but, for the reasons set forth below, declines at this time to assess further damages against Bertoli or to order his imprisonment. The Court does direct, however, that failure to comply with the specific directions of the Court as set forth in this opinion will invoke the full application of the Court's contempt powers against Bertoli.

Bertoli, the president of Executive, was subpoenaed by the trustee to produce rec-

ords and testify in his capacity as a controlling officer of five other corporations, debtors of the estate of Executive[1], against whom the trustee had obtained judgments in excess of $1,000,000. The trustee wished to learn the location and nature of the assets of these firms and requested their financial records for the years 1974–76. On September 23, 1976, Bertoli appeared at the offices of the trustee's counsel pursuant to the subpoenas but refused to answer any questions until the trustee and his counsel had met his demand for a statement, allegedly required under 18 U.S.C. § 3504, concerning illegal electronic surveillance of Bertoli. No other objection or excuse was registered by Bertoli at that time and the examination ceased in the face of Bertoli's consistent refusal to answer.

Thereafter the trustee applied to this Court for a determination that Bertoli had not asserted a valid excuse for failing to obey the subpoenas and for an order directing Bertoli to appear and answer or be found in contempt. A hearing was held on 15 days notice on October 15, 1976. Bertoli appeared in his own behalf and argued that his excuse based on 18 U.S.C. § 3504 was valid. The Court, by memorandum dated October 28, 1976, found that Bertoli's sole excuse for failing to respond to the subpoenas was totally without merit. Thus, by separate order dated October 15, 1976, Bertoli was directed to pay to the trustee the sum of $810.64, the amount of damages and attorneys' fees incurred by the estate of Executive by reason of Bertoli's "[f]ailure . . . without adequate excuse to obey a subpoena served upon him." Fed.R.Civ.P. 45(f). Bertoli was further directed by the order of October 15 to reappear at the offices of the trustee's counsel on October 29, 1976 with the subpoenaed documents and to pay to the trustee at that time the attorneys' fees and damages assessed in the order.

On October 29 Bertoli appeared at the attorneys' offices as ordered, but the results were approximately the same as his previous appearance. He was first asked if he had brought the payment of $810.64 as ordered by the Court. He responded by reading the following statement:

"I refuse to answer any questions on the grounds that they and these proceedings violate my rights under the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, and under the United States Code, and for the reason I believe that I have been the object of illegal electronic and personal surveillance, and illegal opening of my mail. For the reason that this proceeding and this questioning constitutes an abuse of due process." Transcript of October 29, 1976 Deposition at 14.

Bertoli was then asked if he was an officer of each of the five corporations under subpoena and five times he made the same response as quoted above. When asked to produce the subpoenaed records his response was identical. Indeed, Bertoli announced his intention to make the same response to any and all questions asked by counsel, and, following that intention, refused even to give his home address on the grounds quoted above.

After 15 minutes of this repetitive dialogue, the trustee's counsel announced a recess in the deposition and telephoned the chambers of this Court to request an immediate court appearance pursuant to the order of October 15. One hour later, the parties were heard in open court. At that time, and in subsequent papers submitted to the Court, Bertoli argued that he had an absolute right to take his "constitutional privileges" unless given a grant of immunity. In explanation of his failure to pay the damages and attorneys' fees, he stated:

"There's a judgment outstanding against me by the Internal Revenue Service, for over $20,000. To go any further than that as to why the payment was not provided, I would believe, would be a

---

1. The corporations and the amounts of their indebtedness to Executive are as follows:

| | |
|---|---|
| Freelton Investments, Ltd. | $338,601.34 |
| Hemisphere Investment Services, Ltd. | 276,137.89 |
| Lilrich Mines, Ltd. | 204,036.25 |
| Raydop Corp. | 7,305.03 |
| Vecat, Inc. | 122,143.18 |

To these debts accrued judgment interest has been added, resulting in the full amount owing to the estate of Executive.

violation of my constitutional privilege. If there was money to be paid to anyone, it would seem to be the Internal Revenue Service first." Transcript of October 29, 1976 Hearing at 6.

In a subsequent affidavit Bertoli amplified his refusal to pay, stating, "Affiant is without funds, has no bank account and cannot pay the damages ordered by this Court." Affidavit of Richard O. Bertoli, sworn to November 15, 1976, ¶ 4.

### Attorneys' Fees and Damages

■ Although Bertoli refused at the deposition of October 29 to respond in any way to inquiries concerning his failure to pay the sum of $810.64 to the trustee for attorneys' fees and damages incurred as a result of Bertoli's failure without adequate excuse to obey the lawful subpoenas duces tecum of this Court, he now states under oath that he is "without funds, has no bank account and cannot pay" those damages and attorneys' fees. Inability to comply with a court order requiring the payment of money can constitute a defense to a charge of civil contempt. *In re Sobol*, 242 F. 487, 489 (2d Cir. 1917); *Schultz v. Horner Iron & Metals Corp.*, 63 CCH Lab. Cas. ¶ 32,240 (S.D.N.Y. 1970). The Court is under a duty, however, to make a "sufficient examination to find whether any of the above reasons [poverty, insolvency, or other cause not attributable to the fault of the party charged] for not punishing contempt, exist." *In re Sobol, supra*, 242 F. at 489.

■ The affidavit submitted by Bertoli does not satisfy the Court that its duty has been fulfilled. Bertoli has stated only that he has no "funds" and "no bank account." He must establish, however, that he has no assets of any kind out of which he can satisfy the order of this Court, and he must do so under penalty of perjury. It will also be open to the trustee and his counsel to attempt to establish, by independent evidence, that Bertoli does have such assets. If this showing is made, and Bertoli continues to refuse to pay, he will be found in contempt of Court. Initially, Bertoli will be given the opportunity to fulfill this duty at the occasion of his next deposition by the trustee's counsel. If he fails to meet his burden at that time, the Court will schedule a full evidentiary hearing at which Bertoli will be required to respond or be found in contempt.

■ It must be noted that Bertoli has claimed a wide range of alleged constitutional privileges to justify his failure to pay the damages or to respond in any way concerning those damages.[2] Certainly Bertoli has a full right to invoke his fifth amendment privilege against self-incrimination whenever it is "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). This "privilege afforded not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime." *Id.* at 486, 71 S.Ct. at 818. This right was clearly acknowledged in the depositions; the trustee's counsel stated at the beginning of each,

---

**2.** The Court will not address itself at any length to Bertoli's claim of privilege based on the first, third, fourth, sixth, eighth, ninth and fourteenth amendments, since they are completely inapposite under the facts and circumstances of this case. Bertoli's right of free speech is not being interfered with, nor do the subpoenas constitute either a search and/or seizure or a cruel and unusual punishment. No sixth or ninth amendment rights are involved, and the lack of state action makes section one of the fourteenth amendment inapplicable. Finally, it is difficult to understand how the subpoenas violate Bertoli's rights under the third amendment, which reads in full as follows:

"No soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law."

"In view of the fact that the trustee has received numerous subpoenas from various regulatory agencies of the government, I believe it is appropriate that I advise you of your rights.

"You have the right to remain silent and anything that you say in this proceeding will be used against you in a court of law. You have the right to have an attorney present during this questioning." *E. g.,* Transcript of October 29, 1976 Deposition at 13–14.

After consideration of this context, however, the Court cannot conclude that requiring Bertoli to respond more completely in justification of his statement that he cannot comply with the order of October 29 directing the payment of damages would compel Bertoli to cross the line into self-incrimination, even in the broadest sense of that term.

*Subpoenas Duces Tecum*

■ The fifth amendment threshold with respect to the subpoenas duces tecum is more closely at hand. It is clear that Bertoli may not claim even a personal fifth amendment privilege as a justification for failing to produce corporate records of which he is the custodian. *Curcio v. United States,* 354 U.S. 118, 122, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). Thus, he must state, again under penalty of perjury, either that he does not have possession of the subpoenaed records and is not the custodian of such records or that he has another valid excuse for failing to produce them. *See McPhaul v. United States,* 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960). Moreover, the failure of Bertoli to account in any way for his nonproduction of the books, coupled with the trustee's reasonable belief that Bertoli is the custodian of any such records, is prima facie evidence of Bertoli's contempt of the subpoenas duces tecum. *See id.* at 378–79, 81 S.Ct. 138.

■ If, however, Bertoli does state under penalty of perjury that he does not possess the subpoenaed documents and is not their custodian, then further questioning concerning the documents must cease in the face of Bertoli's assertion of his personal fifth amendment privilege against self-incrimination. *Curcio v. United States, supra.* Nevertheless, Bertoli may still be found in contempt if the trustee can establish at a Court hearing that Bertoli does possess or is the custodian of the subpoenaed documents. If the trustee makes such a showing, and if Bertoli fails to adequately explain his nonproduction, he will be found in contempt.

In sum, Bertoli is once again ordered to respond to the subpoenas duces tecum and to pay the Court-ordered damages and attorneys' fees in accordance with the foregoing discussion. Failure to comply will result in a Court proceeding to adjudicate Bertoli in contempt of court.

So ordered.